IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| Vs. | § | CIVIL ACTION NO. 2:05CV443 |
| COMCAST CORP., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**1.    Introduction.**

This case requires application of professional responsibility standards to attorneys who prosecute patent infringement cases for one client while concurrently representing, on other matters, a potential infringer. The court is persuaded that disqualification is required in the circumstances of this case.

**2.    Facts and Procedural Posture.**

Rembrandt Technologies, LP ("Rembrandt") has filed three separate lawsuits in this court alleging infringement of the same patents by various cable companies. In this case, filed on September 15, 2005, Fish & Richardson ("F&R") represents Rembrandt.

On behalf of Rembrandt, F&R has urged the court to adopt various claim construction positions as the law of the case. F&R also advocates that Comcast infringes the patents-in-suit because it adheres to two *industry* standards: the ATSC standard for United States Patent No. 5,43,627 ("the '627 patent") and DOCSIS for United States Patent Nos. 5,852,631, 4,937,819, and 5,719,858 ("the '631, '819, and '858 patents"). Rembrandt references the ATSC and DOCSIS

standards at length in its infringement contentions.

After F&R filed this case on behalf of Rembrandt, the law firm accepted representation of Time Warner Cable Inc. ("Time Warner") in a case filed in this district styled *Digital Packet Licensing Inc. v. Time Warner Cable*, No. 2:05CV451, pending before the Hon. Leonard Davis. In its effort to secure Time Warner's business, on September 29, 2005, F&R made a "pitch" to Time Warner using a slide presentation. The presentation detailed F&R's experience handling cases in this district. F&R omitted this case from its pitch materials, despite the fact that it had filed this case on behalf of Rembrandt only thirteen days before the presentation to Time Warner. Ultimately, Time Warner hired F&R to represent it in the *Digital Packet* case.

In the *Digital Packet* case, the plaintiff accused Time Warner of infringing a patent titled "Multiplexed Digital Packet Telephone System." During that litigation, Time Warner provided F&R with confidential information about Time Warner's legal strategy and Time Warner's systems and technology. This included information about claim construction, non-infringement positions, and other legal issues in the *Digital Packet* case. Time Warner's engineers also provided F&R with information about Time Warner's voice and data networks. In April 2006, Time Warner and the plaintiffs in the *Digital Packet* case reached a settlement. F&R continued to represent Time Warner for several weeks after the conclusion of the settlement.

On June 1, 2006, Rembrandt filed two more cases in this district alleging infringement of the same patents that are asserted in this case. In one of these cases, Rembrandt sued Time Warner. It sued Charter Communications in the second case. Originally, F&R represented Rembrandt in the Charter case but not in the Time Warner suit.

Time Warner questioned the propriety of F&R's representation of Rembrandt in both the

present case and in the *Charter* case. F&R withdrew from the *Charter* case but not this case. Time Warner moved to intervene for the limited purpose of filing a motion to disqualify F&R. The court allowed the intervention and now addresses the motion to disqualify.

**3.     Legal Principles.**

Motions to disqualify counsel in Texas federal courts implicate federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). This court is not limited to the state's ethical rules but may also consider national norms of professional conduct, including the ABA Model Rules and the Model Code. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). Accordingly, for guidance on the applicable standard, the court will consider the Texas Rules of Professional Conduct as well as the provisions of the ABA Model Rule cited by the parties.

Texas Rule 1.06 provides:

except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person: (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interest of another client of the lawyer or the lawyer's firm; or (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

Texas Rule 1.06 permits such representations only when the lawyer reasonably believes the representation of each client will not be materially affected and each affected client consents to such representation after full disclosure. Tex. R. Prof. Conduct 1.06(c).

ABA Model Rule 1.7 provides:

(a)     Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.

A concurrent conflict of interest exists if:

(1)     *the representation of one client will be directly adverse to another client*; or

>    (2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

ABA Model Rule 1.7(a)(emphasis added). Model Rule 1.7(b) permits concurrent conflicts of interest under certain circumstances with the client's consent. ABA Model Rule 1.7(b).

Both rules require a showing of direct adversity in the context of concurrent representations. The text of the Texas Rule, however, also requires that the two matters be "substantially related." The Fifth Circuit, faced with a conflict between the ABA Model Rules and Code and the Texas Rules, opted to apply the stricter national standards. *In re Dresser*, 972 F.2d 540 (5th Cir. 1992). *Dresser* involved a situation in which a lawyer filed a suit against a current client. The court emphasized that the motion to disqualify was governed by the ethical rules announced by the national profession in light of the public interest and the litigants' rights. *Id*. at 543. Thus, in *Dresser*, the court turned "to the current national standards of legal ethics to first consider whether this dual representation amounts to impropriety." *Id*. at 544. One of the standards considered by the Fifth Circuit in its rejection of the Texas rule was a former version of ABA Model Rule 1.7. *Id*. at 544 n. 7. In light of the Fifth Circuit's analysis in *Dresser* and its reliance on the provisions of the ABA Model Rules and Code, this court will consider the motion to disqualify in light of the standards announced in ABA Model Rule 1.7.[1]

As indicated above, ABA Model Rule 1.7 prohibits "concurrent conflicts of interest." Under Model Rule 1.7, Time Warner must establish two things: (1) that it is a current client of F&R; and (2) that F&R's representation of Rembrandt is directly adverse to it. Time Warner has demonstrated

---

[1]  This holding renders it unnecessary to consider the question whether the *Digital Packet* case is a matter substantially related to this case.

both.

The first issue is whether Time Warner is a "current client" of F&R, even though the *Data Packet* litigation settled before Rembrandt filed suit against Time Warner. In *Snapping Shoals Elec. Membership Corp. v. RLI Insurance Corp.*, 2006 WL 1877078, at *2 (N.D. Ga. July 25, 2006), the court considered the question whether a client was a "current client" of a law firm under similar facts. The law firm argued that the client was not a current client because the one remaining matter covered by the representation had settled and the law firm agreed it would not take on any new work for the client. The court rejected this argument. The court stated: "[b]ecause it is undisputed that Paul Hastings has represented L-3 Titan during the pendency of the instant action, the court finds that L-3 Titan is a "current client" within the meaning of [Georgia] Rule 1.7(a)." In this case, it is undisputed that Time Warner was a client of F&R during the pendency of this case. For purposes of the present motion, Time Warner is therefore considered a current client of F&R.

Because the court considers Time Warner a current client of F&R, the second question is whether F&R is acting directly adverse to Time Warner. A Connecticut District Court recently addressed a similar issue. *Enzo Biochem, Inc. v. Applera Corp.*, ___ F.Supp.2d ___, 2007 WL 30338 (D. Conn. Jan. 5, 2007). In *Enzo*, the Hunton firm represented a client in a patent case against one defendant. The same plaintiff, represented by the Greenberg firm, sued a different defendant. Some of the same patents were asserted in both cases. A client of the Hunton firm, GE, later acquired the defendant being sued in the second case. The Hunton lawyers representing the plaintiff in the first case aided, to a certain extent, the Greenberg lawyers representing the plaintiff in the second case. GE contended that the Hunton firm's concurrent representation of Enzo in the first case and the GE subsidiary sued by Enzo in the second case amounted to an impermissible conflict of

interest.

GE intervened in the first case and moved to disqualify the Hunton firm. The court evaluated the evidence and concluded that GE had not demonstrated a sufficient showing of direct adversity. The court stated that "while the construction of [the plaintiff's] patents applicable to the infringement claims brought against two separate accused infringers . . . implicates pretrial *Markman* overlap, *the trials of how those constructions apply to the respective accused products or conduct are wholly separate*." *Enzo*, 2007 WL 30338 at *7 (emphasis added). As a result, the court refused to disqualify the Hunton firm from representing the plaintiff in the first case.

The court agrees with *Enzo* that the mere possibility of overlapping *Markman* proceedings is insufficient to show direct adversity, particularly when the trials of how the constructions apply to accused products or conduct varies from defendant to defendant. Here, in contrast to *Enzo*, F&R is not simply advocating claim construction positions that might, at some later date, adversely impact Time Warner. F&R advocates that the Comcast defendants infringe the patents because the defendants comply with industry standards. In particular, F&R advocates in this case that Comcast infringes because it adheres to the ATSC standard for United States Patent No. 5,43,627 ("the '627 patent") and DOCSIS for United States Patent Nos. 5,852,631, 4,937,819, and 5,719,858 ("the '631, '819, and '858 patents"). The practical significance of Rembrandt's infringement theory is to indict for patent infringement all major cable companies who follow the industry standards. A finding of infringement and an injunction issued by this court against a cable company for compliance with industry standards would have a significant practical effect on Time Warner.

There are additional distinctions between this case and the *Enzo* decision that lead the court to find the requisite direct adversity. Rembrandt filed its cases in the same district. Its case against

Time Warner is pending before the same judge at roughly the same time as this case, but this case was filed first. Although it is true that the claim construction rulings in this case would not be binding on Time Warner, there is a likelihood that the positions taken by F&R in this case could, as a practical matter, prejudice Time Warner in subsequent proceedings. As a result, on these facts, this court reaches a different conclusion from the one in *Enzo*. F&R's representation of Rembrandt in this case is directly adverse to Time Warner.

The relevant national standard supports a finding that an impermissible conflict of interest exists. In this circuit, however, a disqualification motion requires the court to balance the likelihood of public suspicion against a party's right to counsel of choice. *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995). In doing so, the court has considered the prejudice to Rembrandt. Rembrandt urges that F&R is its counsel of choice in this case and is extremely familiar with the technology at issue. In the court's view, however, this interest is not sufficient to overcome the grounds for disqualification. The court must consider Time Warner's reasonable expectations as well. Much of the prejudice might have been avoided had F&R disclosed this case when it solicited Time Warner's business in the *Digital Packet* litigation. Had that occurred, Time Warner could have secured other counsel and might not have been a current client of F&R during the pendency of this case. Moreover, Time Warner did not delay the filing of its motion. On balance, the court is confident that Rembrandt will be able to secure other counsel to prosecute this case without undue delay.

**4.     Conclusion.**

The facts of this case tip in favor of disqualification because the court finds that the positions taken by F&R on behalf of Rembrandt are directly adverse to Time Warner. The court therefore

grants the motion to disqualify.

SIGNED this  8th  day of February, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE